NOT FOR PUBLICATION

RECEIVED
SEP 25 2017
AT 8:30_____M
WILLIAM T. WALSH
CLERK

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

ELYSEE NICOLAS, *individually and as representative of a class of participants and beneficiaries on behalf of the Princeton University 403(b) Plan*

Plaintiff,

v.

THE TRUSTEES OF PRINCETON UNIVERSITY,

Defendant.

Civ. No. 17-3695

**AMENDED OPINION**

THOMPSON, U.S.D.J.

### INTRODUCTION

This matter comes before the Court on a Motion to Dismiss and, in the alternative, Motion for Summary Judgment brought by Defendant The Trustees of Princeton University ("Defendant"). (ECF No. 7.) The Court has decided the Motion after considering the parties' written submissions without oral argument pursuant to Local Civil Rule 78.1(b). For the following reasons, Defendant's Motion is granted in part and denied in part.

### BACKGROUND

Plaintiff Elysee Nicolas ("Plaintiff") brings this putative class action alleging breaches of fiduciary duties under the Employee Retirement Income Security Act ("ERISA"), 28 U.S.C. §§ 1001–1461. Plaintiff, like other faculty and staff at Princeton University, is a participant in the Princeton University Retirement Plan and the Princeton University Savings Plan ("the Plans"). (Compl. ¶¶ 1, 11, 13, ECF No. 1.) Defendant is the governing body of Princeton University, a

1

private, nonprofit institution of higher learning, (*id.* ¶ 14), and administrator of the Plans, (*id.* ¶ 15).[1]

Plaintiff alleges that Defendant's actions caused participants in the Plans to pay excessive administrative and recordkeeping fees. (*Id.* ¶¶ 25–55.) In particular, Plaintiff cites Defendant's failure to use its bargaining power to negotiate lower fees or conduct competitive bidding for recordkeepers (*id.* ¶¶ 26–27); contracting with two recordkeepers instead of one (*id.* ¶¶ 30–37); and using an asset-based model instead of a fixed dollar amount per participant (revenue sharing) (*id.* ¶¶ 42–50). Plaintiff likewise alleges that Defendant failed to remove two historically underperforming Plan investment options: the CREF Stock Account and TIAA Real Estate Account, each of which carried high investment management fees and low returns as compared to appropriate benchmarks and comparable investment funds. (*Id.* ¶¶ 56–80.) Plaintiff accordingly purports to bring this class action on behalf of "All participants and beneficiaries of The Princeton University Retirement Plan and the Princeton University Retirement Savings Plan from May 24, 2011, through the date of judgment . . . ." (*Id.* ¶ 87.)

Plaintiff's Complaint specifies three Counts, each of which *de facto* contains two subparts because the allegations pertain to breaches of distinct fiduciary duties: the duty of loyalty and the duty of prudence. Plaintiff alleges breaches of the fiduciary duties of loyalty and

---

[1] In a short aside, Defendant notes that the Trustees of Princeton University "has no fiduciary responsibility under the Plans." (Def.'s Mem. Mot. Dismiss at 4 n.4.) Defendant asserts that the Princeton University Benefits Committee, whose members are appointed by Princeton's Board of Trustees, is the named fiduciary of the Plans, and Plaintiff should be instructed to amend his Complaint accordingly. (*Id.* at 4, 4 n.4; Nilsen Decl., Ex. A art. X, § 10.1; Nilsen Decl., Ex. B art. X, § 10.1.) "[A]n entity is only a fiduciary to the extent it possesses authority or discretionary control over the plan . . . ." *Renfro v. Unisys Corp.*, 671 F.3d 314, 321 (3d Cir. 2011); *see also* 29 U.S.C. § 1002(21)(A). Applying this standard, Defendant's own submission strongly suggests Defendant is properly construed as a fiduciary here. (*See* Nilsen Decl. ¶ 1 ("I am the Assistant Vice President for Human Resources at The Trustees of Princeton University . . . . In this role, my job responsibilities include the design and administration of . . . the 'Plans' . . . .").)

prudence for: (I) unreasonable administrative fees; (II) unreasonable investment management fees and performance losses with respect to the two particular annuities identified above; and (III) failure to monitor fiduciaries and service providers. On August 7, 2017, Defendant filed this Motion to Dismiss and for Summary Judgment, including supporting materials. (Def.'s Mem. Mot. Dismiss, ECF No. 7; Def.'s Statement of Undisputed Material Facts ("SOMF"), ECF No. 7-2; Shah Decl., ECF No. 7-3; Nilsen Decl., ECF No. 7-4.)

## LEGAL STANDARDS

I. Federal Rule of Civil Procedure 12(b)(6)

A motion under Federal Rule of Civil Procedure 12(b)(6) tests the sufficiency of a complaint. *Kost v. Kozakiewicz*, 1 F.3d 176, 183 (3d Cir. 1993). The defendant bears the burden of showing that no claim has been presented. *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005). When considering a Rule 12(b)(6) motion, a district court should conduct a three-part analysis. *See Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011). "First, the court must 'take note of the elements a plaintiff must plead to state a claim.'" *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 675 (2009)). Second, the court must accept as true all of a plaintiff's well-pleaded factual allegations and construe the complaint in the light most favorable to the plaintiff. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210–11 (3d Cir. 2009); *see also Connelly v. Lane Const. Corp.*, 2016 WL 106159 (3d Cir. Jan. 11, 2016). However, the court may disregard any conclusory legal allegations. *Fowler*, 578 F.3d at 203. Finally, the court must determine whether the "facts are sufficient to show that plaintiff has a 'plausible claim for relief.'" *Id.* at 211 (quoting *Iqbal*, 556 U.S. at 679). If the complaint does not demonstrate more than a "mere possibility of misconduct," the complaint must be dismissed. *See Gelman v. State Farm Mut. Auto. Ins. Co.*, 583 F.3d 187, 190 (3d Cir. 2009) (quoting *Iqbal*, 556 U.S. at 679).

II.    Federal Rule of Civil Procedure 56

Summary judgment shall be granted if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A dispute is "genuine" if it could lead a "reasonable jury [to] return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A fact is "material" if it will "affect the outcome of the suit under the governing law." *Id.* When deciding the existence of a genuine dispute of material fact, a court's role is not to weigh the evidence; all reasonable "inferences, doubts, and issues of credibility should be resolved against the moving party." *Meyer v. Riegel Prods. Corp.*, 720 F.2d 303, 307 n.2 (3d Cir. 1983). In resolving a motion for summary judgment, a district court considers the facts drawn from "the pleadings, the discovery and disclosure materials, and any affidavits." *Curley v. Klem*, 298 F.3d 271, 276–77 (3d Cir. 2002) (internal quotations omitted). The court must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251–52. Summary judgment should be granted if the evidence available would not support a jury verdict in favor of the nonmoving party. *Id.* at 248–49. The Court must grant summary judgment against any party "who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322.

## ANALYSIS

Defendant argues that Plaintiff fails to state a plausible claim of fiduciary breach under ERISA on all three counts alleged in the Complaint, warranting dismissal. Defendant argues alternatively that Plaintiff's Complaint is time-barred under ERISA's statute of limitations, warranting summary judgment in favor of Defendant. The Court will address each theory in turn.

4

I.   Motion to Dismiss: Fiduciary Breaches

ERISA imposes on plan fiduciaries "strict standards of trustee conduct, . . . most prominently, a standard of loyalty and a standard of care." *Cent. States, Se. & Sw. Areas Pension Fund v. Cent. Transp., Inc.*, 472 U.S. 559, 570 (1985); *Nat'l Sec. Sys., Inc. v. Iola*, 700 F.3d 65, 81 (3d Cir. 2012) ("ERISA also prescribes standards of conduct for plan fiduciaries, derived in large part from the common law of trusts."). Although the fiduciary duties of loyalty and prudence are distinct under ERISA, all three counts of Plaintiff's Complaint seem to collapse the duties by supplying the same factual underpinnings for the alleged breaches of each duty. (*See, e.g.*, Compl. ¶¶ 95, 104.) The Court will attempt to disaggregate these claims.[2]

A. Breaches of the Duty of Loyalty

The duty of loyalty requires a plan fiduciary to "discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries and . . . for the exclusive purpose of providing benefits to participants and their beneficiaries; and . . . defraying reasonable expenses of administering the plan." *Cent. States*, 472 U.S. at 571 (quoting 29 U.S.C. § 1104(a)(1)(A)); *Danza v. Fid. Mgmt. Tr. Co.*, 533 F. App'x 120, 123 (3d Cir. 2013) ("Section 404 in essence codifies a common law fiduciary's general duty of loyalty . . . to administer the trust solely in the interest of the beneficiaries.").

Accepting as true the allegations in the Complaint and giving Plaintiff every favorable inference therefrom, the Complaint does not plead sufficient facts to establish any breach of the

---

[2] Plaintiff's Complaint also includes, without specifying particular factual allegations to support their inclusion, additional ERISA standards: (1) the anti-inurement provision of ERISA, which reiterates the duty of loyalty insofar as it proscribes self-dealing, 29 U.S.C. § 1103(c)(1); (2) liability as a cofiduciary pursuant to 29 U.S.C. § 1105(a); and (3) personal liability to restore losses and profits from alleged ERISA violations pursuant to 29 U.S.C. § 1109(a). (*See* Compl. ¶¶ 82–85.) However, Plaintiff does not include these provisions among his three Counts. Defendant's moving papers likewise do not address these provisions. Therefore, the Court will not consider them at this time.

5

duty of loyalty. *See, e.g.*, *Sacerdote v. N.Y. Univ.*, 2017 WL 3701482, at *5 (S.D.N.Y. Aug. 25, 2017) ("To state a loyalty-based claim under ERISA . . . a plaintiff must do more than simply recast purported breaches of the duty of prudence as disloyal acts."). Plaintiff pleads no facts suggesting Defendant benefitted, financially or otherwise, from any decisions related to the Plans or engaged in disloyal conduct in order to benefit itself or someone other than the Plans' beneficiaries; rather, Plaintiff's loyalty claims are merely characterizations that piggyback off of the prudence claims, without any independent factual predicate. (*See, e.g.*, Compl. ¶¶ 37, 48, 78–79, 95, 104; *see also* Def.'s Mem. Mot. Dismiss at 14 n.14.) The Third Circuit has instructed that where a complaint is vulnerable to Rule 12(b)(6) dismissal, "a District Court must permit a curative amendment, unless an amendment would be inequitable or futile." *Alston v. Parker*, 363 F.3d 229, 235 (3d Cir. 2004). The Court does not find that it would be inequitable or futile to grant Plaintiff leave to amend his Complaint. The Court will dismiss Counts I–III of the Complaint without prejudice to the extent they pertain to breaches of the duty of loyalty, and grant Plaintiff leave to amend.

   B. <u>Breaches of the Duty of Prudence</u>

The duty of prudence requires a plan fiduciary to apply "the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims." *Cent. States*, 472 U.S. at 571 (quoting 29 U.S.C. § 1104(a)(1)(B)). The Third Circuit has characterized the prudence standard as "flexible," adjusting to the "character and aims of the particular type of plan" at issue. *Renfro*, 671 F.3d at 322. The Third Circuit endorses two approaches to applying the prudence standard: (1) focusing on the fiduciary's "conduct in arriving at [that] investment decision[,]" *id.* (quoting *In re Unisys Sav. Plan Litig. (Unisys I)*, 74 F.3d 420, 434 (3d Cir. 1996), or (2) examining "whether a questioned decision led to objectively

6

prudent investments." *Id.* (citing *In re Unisys Sav. Plan Litig. (Unisys II)*, 173 F.3d 145, 153–54 (3d. Cir. 1999)). Thus, both the reasonableness of the fiduciary's decision-making process and the objective results of the selected investments can be dispositive in determining whether the fiduciary satisfied their duty of care.

    1. Reasonableness of Administrative Fees and Investment Management Fees

In Counts I and II, Plaintiff alleges two claims related to excessive fees: (1) that Defendant, despite its substantial bargaining power, included investment options in the Plans carrying "far higher administrative fees and expenses relative to the size and complexity of the Plans[,]" which "charged an asset-based fee for recordkeeping" that was excessive and unreasonable (Compl. ¶¶ 2, 42, 45, 47, 50, 93–95), and (2) that Defendant failed to remove two specific funds, the CREF Stock Account and TIAA Real Estate Account, that carried unreasonably excessive fees (*id.* ¶¶ 62, 65, 75–78, 100-01). Plaintiff further alleges that Defendant failed to solicit competitive bids for recordkeeping (*id.* ¶¶ 26, 49) and imprudently contracted with two recordkeepers, creating an "inefficient and costly structure" (*id.* ¶¶ 37, 43).

A plan fiduciary "may not charge unreasonable service fees[.]" *Danza v. Fid. Mgmt. Tr. Co.*, 2012 WL 3599362, at *2 (D.N.J. Aug. 20, 2012), *aff'd*, 533 F. App'x 120 (3d Cir. 2013). However, in the context of a plan with many options, the Third Circuit counsels that

> the range of investment options and the characteristics of those included options—including the risk profiles, investment strategies, and associated fees—are highly relevant and readily ascertainable facts against which the plausibility of claims challenging the overall composition of a plan's mix and range of investment options should be measured.

*Renfro*, 671 F.3d at 327. Much like Plaintiff here alleges, the *Renfro* plaintiffs argued that "the administrative fees governed by the trust agreement, and the fees associated with each retail mutual fund," were excessive as compared to other less expensive investment options not included in the plan. *Id.* at 319, 326. The Third Circuit held that plaintiffs provided "nothing

7

more than conclusory assertions" of fiduciary breaches, *id.* at 328, given the range and variety of investment options offered in the plan, including some "low-risk and low-fee options," *id.* at 327. It therefore affirmed the district court's dismissal for failure to state a claim. *Id.* at 328.

However, the *Renfro* plaintiffs "d[id] not challenge the prudence of the inclusion of any particular investment option" or its associated fees, *id.* at 326, and "[t]heir allegations concerning fees [we]re directed exclusively to the fee structure and [we]re limited to contentions that [Defendant] should have paid per-participant fees rather than fees based on a percentage of assets in the plan," *id.* at 327. Thus, *Renfro* is distinguishable. Here, in addition to the types of factual allegations in *Renfro*, Plaintiff has alleged specific breaching conduct: failing to conduct a competitive bidding process; failing to use significant bargaining power to negotiate lower fees; retaining two recordkeepers; and failing to remove two particularly unreasonable funds. Other courts to have considered substantially similar complaints have found them to survive motions to dismiss for similar reasons. *See, e.g., Sacerdote*, 2017 WL 3701482, at *8–9; *Henderson v. Emory Univ.*, 2017 WL 2558565, at *2–6 (N.D. Ga. May 10, 2017). Accepting as true the facts alleged in the Complaint and giving Plaintiff every favorable inference therefrom, Plaintiff's Complaint states a claim for relief. Defendant's motion to dismiss is denied with respect to the alleged breaches of the duty of prudence regarding administrative and investment management fees in Counts I and II.

   2. <u>Performance Losses: Failure to Monitor and Remove Imprudent Investments</u>

In Count II, Plaintiff alleges that Defendant imprudently retained the CREF Stock Account and TIAA Real Estate Account, despite their poor performance as compared to similar available options and recognized benchmarks. (Compl. ¶¶ 57–80, 100–01.) "A plaintiff may allege that a fiduciary breached the duty of prudence by failing to properly monitor investments and remove imprudent ones." *Tibble v. Edison Int'l*, 135 S. Ct. 1823, 1829 (2015). In addition to

examining the fiduciary's decision-making process, the Third Circuit allows courts to apply ERISA's prudence standard based on "whether a questioned decision led to objectively prudent investments." *Renfro*, 671 F.3d at 322 (citing *Unisys II*, 173 F.3d at 153–54).[3]

Defendant argues that Plaintiff fails to state a viable claim of poor performance because Plaintiff refers to a benchmark that is not "proper" and funds that are not "suitable comparators." (Def.'s Mem. Mot. Dismiss at 21, 23.) However, Defendant's own exhibit lists the exact benchmark Plaintiff identifies under the heading "Benchmark(s) And Indices" for one of the specified annuities. (Nilsen Decl., Ex. F, at 2 (listing the Russell 3000 Index as one of two benchmarks for the CREF Stock Account); Def.'s Mem. Mot. Dismiss at 7; Def.'s SOMF ¶ 18.) Defendant raises factual questions about whether the alternative funds Plaintiff suggests, (Compl. ¶¶ 62–65, 70–72), are apt comparisons—and, therefore, whether the underperformance Plaintiff depicts is an accurate portrait. (*See* Def.'s Mem. Mot. Dismiss at 22–23.) Such questions do not warrant dismissal—to the contrary, they suggest the need for further information from both parties. Plaintiff's allegations support a claim of imprudence sufficient to overcome a motion to dismiss. Defendant's motion is denied with regard to the alleged breaches of the duty of prudence in Count II.

### 3. Failure to Monitor Fiduciaries and Service Providers

In Count III, Plaintiff alleges that Defendant breached its fiduciary duties by failing to monitor its appointees, ensure that monitored fiduciaries prudently managed administrative fees, ensure that monitored fiduciaries considered alternative investment options, and remove appointees who performed inadequately. (Compl. ¶ 110.) This Count of Plaintiff's Complaint

---

[3] Defendant cites Second Circuit cases for the proposition that underperformance alone cannot support allegations of a fiduciary breach (Def.'s Mem. Mot. Dismiss at 21), but controlling Third Circuit precedent dictates otherwise.

9

reads like legal conclusions as opposed to factual allegations; Plaintiff does not allege facts about Defendant's actual monitoring process and its specific shortcomings. *Cf. Perez v. WPN Corp.*, 2017 WL 2461452, at *11–15 (W.D. Pa. June 7, 2017) (denying a motion to dismiss on a failure to monitor claim supported by specific factual allegations). Accordingly, Defendant's motion to dismiss is granted with respect to Count III, but, in keeping with Third Circuit guidance, *Alston*, 363 F.3d at 235, Plaintiff is granted leave to amend his complaint consistent with this opinion.

   II.   Motion for Summary Judgment: Statute of Limitations

Defendant argues in the alternative that Plaintiff's entire Complaint is time-barred under the statute of limitations provision of ERISA, warranting summary judgment. (Def.'s Mem. Mot. Dismiss at 24–30). In relevant part, that provision explains that no action may be commenced for a fiduciary breach more than "three years after the earliest date on which the plaintiff had actual knowledge of the breach or violation." 29 U.S.C. § 1113(2). "[A]ctual knowledge of a breach or violation requires that a plaintiff have actual knowledge of all material facts necessary to understand that some claim exists, which facts could include necessary opinions of experts, knowledge of a transaction's harmful consequences, or even actual harm." *Gluck v. Unisys Corp.*, 960 F.2d 1168, 1177 (3d Cir. 1992) (internal citations and quotation marks omitted). In other words, it "requires knowledge of all relevant facts at least sufficient to give the plaintiff knowledge that a fiduciary duty has been breached or ERISA provision violated." *Id.* at 1177–78; *Cetel v. Kirwan Fin. Grp., Inc.*, 460 F.3d 494, 511 (3d Cir. 2006); *Nat'l Sec. Sys., Inc*, 700 F.3d at 99; *see also Alco Indus., Inc. v. Wachovia Corp.*, 527 F. Supp. 2d 399, 411 (E.D. Pa. 2007) ("*Gluck* sets forth a two-pronged test requiring knowledge both of the facts underlying the breach and that those facts constituted a breach.").

The second prong of this test may "include[] 'actual knowledge' of harm inflicted or harmful consequences." *Richard B. Roush, Inc. Profit Sharing Plan v. New England Mut. Life*

10

*Ins. Co.*, 311 F.3d 581, 587 (3d Cir. 2002). The actual knowledge requirement is not satisfied even if the plaintiff had "constructive knowledge of a breach before he actually knows of the breach . . . ." *Gluck*, 960 F.2d at 1176; *see also Ward v. Avaya, Inc.*, 487 F. Supp. 2d 467, 474 (D.N.J. 2007) ("At most, the complaint alleges that . . . such information was available to Plaintiff, but this is not sufficient to trigger the three-year limitations period under § 1113."), *aff'd*, 299 F. App'x 196 (3d Cir. 2008).

Defendant cites only persuasive authority that a plaintiff's willful blindness to available information satisfies actual knowledge. (Def.'s Mem. Mot. Dismiss at 26.) While the Third Circuit certainly does not require the plaintiff to be aware of precise legal standards in order to meet actual knowledge, *see, e.g., Williams v. Webb Law Firm, P.C.*, 628 F. App'x 836, 839 (3d Cir. 2015) (finding actual knowledge regardless of whether plaintiff knew he was an employee under the law, so long as he knew all the facts relevant to his employee status), demonstrating that the plaintiff was merely on notice is not enough. *Cf. Lewis v. Allegheny Ludlum Corp.*, 579 F. App'x 116, 121 (3d Cir. 2014) (finding actual knowledge where plaintiffs began paying increased premiums despite defendant's misrepresentations that they would not have to); *Kurz v. Phila. Elec. Co.*, 96 F.3d 1544, 1551 (3d Cir. 1996) (holding that breach of fiduciary duty was "patently obvious" where defendant "openly announced that certain employees would receive better benefits, and others would not").

While Defendant argues that all relevant facts were "made known to the plaintiff more than three years before the complaint was filed," (Def.'s Mem. Mot. Dismiss at 25), that may only conclusively establish that Plaintiff had *constructive* knowledge of the underlying facts by May 2014. Defendant's assertion that Plaintiff had access to various websites linking to the annuities' prospectuses for more than three years, (*see generally* Def.'s SOMF; Def.'s Mem. Mot. Dismiss at 27–30), does not prove that Plaintiff both knew of the underlying facts and that

11

those facts constituted a breach. Defendant's additional argument that Plaintiff's Complaint references information reflected in the May 1, 2014 prospectus for CREF variable annuities, (Def.'s Mem. Mot. Dismiss at 28), and therefore that Plaintiff could have, and, indeed, must have filed his Complaint prior to May 1, 2017, is similarly unavailing. *See Ward*, 487 F. Supp. 2d at 475 ("The mere allegation by Plaintiff that an event took place on a certain date does not establish that Plaintiff had knowledge of the event on that same date. Consequently, the Court shall not dismiss Plaintiff's claims as time-barred at the pleading stage."). Furthermore, some of Plaintiff's allegations specifically relate to the post-2014 period, after Defendant negotiated a credit to the Plans for some recordkeeping expenses (Compl. ¶¶ 44–45), and others to deficiencies in Defendant's reporting materials (*id.* ¶¶ 51–54), of which Plaintiff may not have had knowledge until sometime after those materials were made available. Examining these facts in favor of the nonmoving party, the Court finds that there is a genuine dispute of material fact as to when Plaintiff developed actual knowledge of the alleged breach. Defendant's motion for summary judgment is denied.

## CONCLUSION

For the reasons stated herein, Defendant's motion is granted in part and denied in part. An appropriate order will follow.

Date: 9/22/17

ANNE E. THOMPSON, U.S.D.J.